UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-026 |
| | ) | |
| STEVEN WAYNE WOOD | ) | |

## **MEMORANDUM AND ORDER**

Now before the Court is the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i) and for the appointment of counsel. [Doc. 141]. The United States has responded in opposition [docs. 143, 147], and the defendant has not replied within the time allowed by this court's Local Rules. For the reasons that follow, the defendant's motion will be denied.

### I.   BACKGROUND

In March 2010, this Court imposed the parties' agreed-upon, below-Career Offender guideline, sentence of 240 months' net imprisonment for conspiring to commit armed bank robbery and for attempted unarmed bank robbery. The parties' agreement likely kept the defendant from receiving a mandatory life sentence. [Docs. 81, 130; 18 U.S.C. § 3559(c)].

The defendant is presently housed at FCI Talladega with a projected release date of February 1, 2025. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Feb. 25, 2021). He now moves for compassionate release due to COVID-19, his age (70), and his documented conditions of hepatitis C and seizure disorder, at least one of which he deems a terminal illness. [Doc. 141, p 3-5; doc. 143, ex. 1].

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do

2

so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[1] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 143, ex. 1]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, his age (70), hepatitis C, and a seizure disorder. Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's arguments (individually and in combination) along with the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[1] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

    . . .

(5) any pertinent policy statement—

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's correctional institution, there are currently zero inmates and 46 staff positive for COVID-19, with 300 inmates and nine staff having recovered, and three inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 25, 2021). These numbers are significant, but the Court simultaneously notes that outside the prison setting our nation remains in grave crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

BOP medical records submitted by the United States show that the defendant has been diagnosed with, and receives treatment and medication for, hepatitis C and seizures. [Doc. 147]. The defendant was described as "seizure-free" and stable on medication from 2012 through 2018 but in late 2019 he was experiencing breakthrough seizures and his medication was increased. [*Id.*]. At a January 27, 2021 appointment the defendant was "feeling well today and has no new or acute problems to report." [*Id.*]. He had not had "any actual full blown seizures since last visit," which appears to have been approximately

two months prior. [*Id.*].

Hepatitis C is presently considered to be a factor which might create an increased risk of severe illness from COVID-19, and the danger of COVID-related complications generally increases with age. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 25, 2021). The BOP's SENTRY Report shows that the defendant is categorized physically as Care Level 2. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Feb. 25, 2021).

Turning to the nature and circumstances of the instant offense and the defendant's history and characteristics, in this case the defendant and a compatriot attempted to rob a bank. [Presentence Investigation Report ("PSR"), ¶¶ 9-10]. The defendant engaged the teller while the codefendant guarded the door while holding a shotgun. [*Id.*, ¶ 9]. The robbery was abandoned after the defendant realized the teller counter was protected by bullet resistant glass. [*Id.*].

When sentenced in this case, the defendant was a Career Offender under the sentencing guidelines. [*Id.*, ¶ 25]. He is presently serving his <u>second</u> federal armed bank robbery sentence. [*Id.*, ¶ 40]. He has also served a federal sentence for armed carjacking.

6

[*Id.*, ¶ 42]. Other prior adult convictions include breaking and entering, grand larceny, escape, multiple DUIs, third-degree burglary, and concealing stolen property (twice). [*Id.*, ¶¶ 33-39, 41]. There was a second-degree burglary conviction at age 17 and convictions for arson and breaking and entering at age ten. [*Id.*, ¶¶ 30, 32]. There have been several parole violations. [*Id.*, ¶¶ 36, 38, 40, 42]. The defendant has reportedly suffered seizures since approximately 1980 [*id.*, ¶ 56], but that condition clearly did not deter his criminal conduct.

SENTRY shows that the defendant is employed, completed a substantial amount of vocational programming during his prior federal incarcerations, and has incurred no disciplinary sanctions while serving his current sentence. On these points, he is commended. Nonetheless, SENTRY also indicates that the BOP still considers the defendant a medium security classification with a medium risk of recidivism.

The Court has considered the relevant § 3553(a) factors, the circumstances of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. The Court recognizes the defendant's age and health problems, along with his clear disciplinary record during the current term of incarceration. However, none of these factors (individually or collectively) are present to an extraordinary and compelling degree such as to justify compassionate release. The Court particularly notes that the record does not document how the defendant's present functioning is impacted by his age, hepatitis C, or seizures.

In any event, all of these points are heavily outweighed by the defendant's lengthy criminal history and prior prison sentences which—much like his seizures—left him

7

undeterred. The defendant is presently serving his third federal sentence for an armed crime. Almost four years of actual time remains on his below-guideline sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Compassionate release on the facts of this case would not reflect the seriousness of the offense of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

### III. APPOINTMENT OF COUNSEL

As for the defendant's request for appointed counsel, there is no constitutional right to an attorney in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant. Moreover, pursuant to this court's Standing Order SO-19-04, Federal Defender Services of

Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a *pro se* § 3582(c)(1)(A) motion.

## IV. CONCLUSION

As provided herein, the defendant's motion for compassionate release and for the appointment of counsel [doc. 141] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge